## L. L. Ginnings v. Meridian Water Works Co. et al.

### [56 South. 450.]

1. APPEAL. *Review. Peremptory instruction. Evidence. Water company. Right to service.*

    In reviewing on appeal a peremptory instruction for appellee the evidence for appellant must be taken as true.

2. WATER COMPANY. *Right to service.*

    Where a water company had discontinued water service to a landlord because of the non-payment of water rentals and a tenant of such landlord in good faith made application for water service, it was the public duty of the water company to let him have the water.

3. SAME.

    It is the duty of the water company to furnish water service to all persons demanding the same in good faith without making them suffer for the dereliction of some third party.

APPEAL from the circuit court of Lauderdale county. HON. JNO. L. BUCKLEY, Judge.

Suit by L. L. Ginnings against the Meridian Water Works Company. From a judgment for defendants, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*F. V. Brahan,* for appellant.

The idea of this case, under the well-settled rule of law, being one for peremptory instruction, I submit is a burlesque on the peremptory instruction practice, and is absurd and ridiculous. The rule, as I understand it, governing peremptory instructions, is that where there is no conflict in the evidence, or where the evidence is of no value, and the court would not permit a verdict to rest on it, in the language of this court, "A failure to give the instruction is an abdication of judiciary author-

ity and licenses the jury to trample underfoot the well-settled principles of law."

Without detailing the defendant's testimony, suffice it to say he testified to every material allegation of his declaration, and Barron corroborated him in every material fact, and both testified that there was no conspiracy between them to wrong the defendant, and plaintiff testified the contract was made in good faith, and that he was damaged in being forced for water, to move his location.

The case of *Burke* v. *Water Valley,* 87 Miss. 732, "is on all fours" with this case, and it is useless to say more. See, also, on this point volumes 29 and 30, L. R. A. (Old Series), pages 376 and 447, respectively.

On the point of damages, see 78 Miss. 873, and 89 Miss. 252 (Hobart's case), and *Vicksburg Water Works Company* v. *Dutton,* 53 So. Rep. 537. Wherefore, I ask that the case be reversed and remanded.

*Williamson & Gilbert,* for appellee.

The facts of this case are wholly unlike the facts in the cases of *Burke* v. *Water, Valley* and *Vicksburg Water works Company* v. *Dutton,* or the other cases cited by counsel in his brief

In the Burke case the city refused to give water service to one tenant in exclusive occupancy for the reason that a former tenant, who was in exclusive occupancy of the premises, was in arrears for water charges. The court decided that in such a case a rule was unreasonable that authorized the discontinuance of water service.

In the Vicksburg case, the city negligently discontinued water service and disconnected the complainant's residence from its mains.

In the present case the undisputed facts are these: That The Barron Shoe Hospital, operated by one Barron, a witness for appellant, occupied a certain storeroom on Fifth street, the same being a small room, and

had in the room certain machinery and employed two or three workmen; that the Barron Shoe Hospital was in arrears for about ten dollars for water rent, which it refused to pay; that some six weeks before the water service was discontinued on account of due and unpaid rental. The appellant had some sort of arrangement with Mr. Barron, by which he was to occupy about fifteen feet square in the southwest corner of the building, the same being the corner most remote from Fifth street; that at the time the water service was discontinued the appellant was occupying that certain space and engaged in the pressing business, having no partition or barrier of any kind to designate or distinguish his part of the room from that used by the Barron Shoe Hospital, except a sort of ''imaginary line,'' as the appellant himself styled it in his testimony, or a pressing table, which rested against the west wall of the building and extended towards the east wall of the building to about two-thirds of the width of the room, leaving the remaining part of the room open and the rear thereof easily accessible to the owner and employees of the Barron Shoe Hospital. It is also shown that the hydrant was located in the southeast corner of the room and that the water closet was in the rear on the outside of the room. According to the testimony of Mr. Barron, one of appellant's witnesses, appellant had no definite term of lease on the property; that they had no understanding whatever about the term of lease and the agreement was not reduced to writing. Whatever agreement they might have had, Mr. Barron breached his agreement in that he refused to furnish water either for appellant's use or his own use, intending all the while that if water service should be given to appellant, that he and his employees would use the water and thereby get the benefit of water services for himself, his employees and that necessary to be used in his business without being liable or responsible to any person.

It is further shown by undisputed testimony that it was the rule of the waterworks management to charge a flat rental of fifty cents for each distinct family or person using water from the same hydrant, besides charging for all water measured by the meter; that rule was explained in detail by Mr. Wilcox, manager of the waterworks business and witness for appellee. The rule of the waterworks management was also introduced, showing that the water service would be discontinued where it was used by other than those who contracted for the service.

The question in this case is whether or not the waterworks management was acting within the bounds of a reasonable rule and regulation, when it discontinued the water service, either acting on a rule already written or ordering a discontinuance and refusing to supply water to appellant, when it understood the facts as disclosed by this record.

Appellant was not a sublessee of the whole room. He simply rented a small space in close proximity with the hydrant. If he is permitted to recover, then there is nothing left for the waterworks management to do, but to furnish water on demand to any person who requests it; provided he is not in arrears for water at the place where he desires the service. To work this scheme out to its full scope, it will readily be seen that any person or concern occupying a room would be authorized to use water until in arrears for several hundred dollars and then rent a small portion of its premises near the water hydrant to a second party, who would demand and receive water service, and thereafter use water for all purposes with perfect impunity. Such a scheme would open the door for fraud and put the waterworks management at the mercy of conniving and conspiring persons and that too, without any relief. The reason for the rule in the Burke case, and the other cases cited by counsel for appellant, has clear foundation for there is

nothing to indicate and indeed no possibility of conspiracy between the previous occupant and the occupant who desires the water service and no room for the practice of fraud in the matter of obtaining water service; but in a case, as the case at bar, the facts and circumstances indicate and show *prima facie* fraud and a rule or decision of the management which has for its purpose self-protection in such instances, we submit to the court is reasonable. But few cases, if any, like the one at bar, would occur in good faith. Cases like the Burke case are likely to occur at any time in the regular course of things, and it is apparent how a rule as was there sought to be enforced, might frequently work hardships.

MAYES, C. J., delivered the opinion of the court.

It appears from this record that appellant was engaged in a cleaning and drying business in the city of Meridian. Some time in November, 1909, appellant rented from one Barron a part of a storehouse, which Barron was then occupying as a shoe repair shop of some kind. When appellant rented a portion of this storehouse from Barron, it seems to have been understood that Barron was to furnish him with necessary water. Some time later the water supply was cut off by the city of Meridian, because Barron, the lessor, had failed to pay the water rentals. The city of Meridian owned and operated its own system of waterworks, and Barron and appellant were using different portions of the same room; each engaged in his own enterprise and having no business association, other than the fact that appellant rented one portion of the room from Barron and was so renting and occupying that portion at the time the water was cut out. When the water was cut out because Barron failed to pay the rentals, appellant complained to Barron first, and, failing to get him to pay up and continue his supply of water, which he claims it was necessary for him to have in order to continue his business,

appellant undertook to supply himself with water to be used in the same room, and made application to the waterworks company to have the water turned on. It seems that a regulation of the waterworks company required an advance payment of two dollars. This amount was paid on the 7th day of January, 1910, and the waterworks company promised to have the water turned on at once. The water was not turned on, and, when appellant inquired in the office as to the reason, he was informed that the waterworks company would not turn on the water, because Mr. Barron, the lessor of that portion of the room occupied by appellant, was behind with his rentals. Appellant tried to explain that he was renting the back portion of the room, and wanted the water for himself; but the explanation was not heeded. The waterworks company would not turn the water on, and appellant was forced to move into another place at an increased rental. It is not shown that this application by appellant was not made in good faith and for the purpose of procuring the water for his own use, though it was attempted to be shown that the real purpose of appellant was to assist Barron in perpetrating a fraud on the waterworks company and getting the water turned on for the use and benefit of Barron, by using the name of appellant. The above facts must be taken as true, since they were testified to by appellant, and at the conclusion of the case the court gave a peremptory instruction for the waterworks company.

It is manifest that this case should have gone to the jury. If a fraud was being perpetrated on the waterworks company, it was for the jury to say; and if appellant made the application for the water in good faith, it was the public duty of the waterworks company to let him have the water. Appellant was not in default in any way, and had just as much right to the use of the water in a half of a room occupied by him as if he had rented the entire building. Counsel for appellee seem

to think that the principle of law declared by the case of *Burke* v. *Water Valley*, 87 Miss. 732, 40 South. 820, 112 Am. St. Rep. 468, has no application here, because appellant did not have the exclusive possession of the room. The rule of law does not rest on the question of whether or not a tenant has exclusive possession, but rests in the duty owing by this public service company, for such it is, whether owned and operated by the municipality or a private person or corporation, to furnish the service demanded to all persons, without making them suffer for the dereliction of some third party.

In the Burke case this court held that a municipality, owning and operating a waterworks plant, could not withhold water from a tenant because a previous occupant of the premises had not paid for water furnished. It also held that any rule or municipal regulation purporting to justify any such conduct on the part of the municipality was void. The principle controlling the Burke case and the case now on trial is exactly the same. The fraudulent use of the water is not to be presumed, and if there was no fraudulent use intended by appellant he had a right to the water. The city acted as its own judge in this matter in cutting out the water, and if it has judged incorrectly, and the application of Mr. Ginnings is in good faith, for the purpose of utilizing the water for himself, and not as a makeshift to shield Barron, he is entitled to the water, and he is entitled to damages for the wrongful refused of the city to let him have it, and to have this question submitted to the jury for their determination.          *Reversed and remanded.*