BIG BEAR OF NORTH CAROLINA, INC.; BELK-BECK CO.; COLONIAL STORES, INC.; K & W CAFETERIA, INC.; ROSE'S STORES, INC.; WINN-DIXIE FOOD STORES, INC.; WAGNER TIRE SERVICE, INC. AND S. S. KRESGE CO. v. THE CITY OF HIGH POINT, NORTH CAROLINA

No. 99

(Filed 24 January 1978)

1. **Municipal Corporations § 37.1— fee for garbage collection—no coercion—no recovery of fees paid**

   Fees charged for trash collection services were validly imposed by defendant city, and plaintiffs failed to show that the payments were made under such coercion as to render them involuntary where the city ordinance provided for discontinuance of trash collection upon nonpayment of fees; the city's control of trash collection and removal did not preclude individuals or private contractors from engaging in the same activity; there was no evidence that plaintiffs ever attempted to remove their own garbage or that any attempt was made to arrange with private firms to remove plaintiffs' garbage; there was no showing that plaintiffs ever requested the city not to service their dumpster boxes; and plaintiffs, by continuing to accept the trash collection service and by paying for it only under protest after service was discontinued, indicated that they desired the city's collection services.

2. **Municipal Corporations § 37.1— garbage collection—voluntary service by municipality—fee collection proper**

   A municipality may provide the service of collecting and removing garbage as an exercise of police powers delegated to it, but a municipality is

under no compulsion to provide such service. Further, a municipality which does provide garbage collection services may impose a charge reasonably commensurate with the cost of this service upon the householder or building occupant, and, under proper classification, the rates charged need not be uniform and a business may be charged at a rate different from individuals.

ON certiorari to review decision of the Court of Appeals, 33 N.C. App. 563, which reversed the judgment of *Rousseau, J.,* dismissing plaintiffs' actions at the 25 October 1976 Regular Civil Session of the GUILFORD Superior Court, High Point Division.

This is a class action brought pursuant to G.S. 1A-1, Rule 23(a), seeking recovery of monies paid by plaintiffs to the City of High Point for garbage collecting services performed by the city. Prior to 21 January 1971, the city without charge collected garbage from dumpsters, large metal receptacles, furnished by plaintiffs. An ordinance, effective 21 January 1971, was enacted by the city which required plaintiffs and others to pay a service charge of $4.00 each time the dumpster box was serviced. The ordinance, Section 10-6 of the High Point Code of Ordinances, in pertinent part, provided:

(a) The director of public works is authorized to determine the type, size, number and location of containers for the collection of garbage, trash, waste or other refuse and the failure to comply with the director of public works instructions as to same shall result in discontinuance of garbage, waste or trash collection service.

(b) All persons, firms or corporations, except single family residences, apartments, and public schools, desiring or required by the director of public works to have dumpster boxes shall pay a fee of four dollars ($4.00) each time the dumpster box is serviced, said fee shall be billed monthly and failure to pay the bill within ten (10) days shall result in a discontinuance of service.

Pursuant to this ordinance, the director of public works directed that all persons, firms and corporations which generated more than 180 gallons of solid waste a week should provide themselves with dumpsters. Plaintiffs came within this regulation so that failure to provide the dumpsters or pay the service fee would result in loss of garbage removal service by the city. Plaintiffs refused to pay the service charge, and the city discontinued

Big Bear v. City of High Point

service on 7 August 1971 and on 9 August plaintiffs, under protest, paid all past due fees. The city thereupon resumed collection of their garbage. Plaintiffs continued to pay the required fees for the collection service under protest.

On 19 January 1972, plaintiffs filed suit seeking to have Section 10-6 of the High Point Code of Ordinances declared unconstitutional and seeking recovery of sums paid pursuant to that ordinance. Judge Barbee sitting without a jury heard this cause and entered judgment on 24 November 1975 declaring Section 10-6(a) unconstitutional. The judgment also declared unconstitutional that portion of Section 10-6(b) of the ordinance which read "or required by the director of public works." The judgment severed the issue of damages for further trial and declared the issue of constitutionality of the ordinance to be a final judgment subject to review by appeal. There was no appeal from this judgment.

Prior to 21 January 1971 and to the date that this action was instituted, there was also in effect an ordinance which provided that only persons under the direction of the superintendent of the division of sanitation could remove garbage set out for collection except by the written consent of the superintendent of the sanitation division. That ordinance is not under attack by plaintiffs.

The question of damages came on to be heard before Rousseau, J., sitting without a jury, on 25 October 1976. After considering the stipulated facts, exhibits, and other evidence, Judge Rousseau found facts, entered conclusions of law, and dismissed the action. We quote pertinent portions of his judgment:

## FINDINGS OF FACT

1. Prior to January 21, 1971, the Plaintiffs voluntarily purchased and provided "dumpster boxes," which the City of High Point serviced free of charge.

### EXCEPTION NO. 1

2. That on January 21, 1971, the Defendant adopted an ordinance amending Chapter 10, Article I, Section 10-6 of the Code of Ordinances of the City of High Point, revised 1957, and that portion of the ordinance not invalidated by the prior judgment entered November 24, 1975, reads as follows:

(b) All persons, firms or corporations, except single family residences, apartments, and public schools, desiring to have dumpster boxes shall pay a fee of four dollars ($4.00) each time the dumpster box is serviced, said fee shall be billed monthly and failure to pay the bill within ten (10) days shall result in a discontinuance of service.

3. The fees paid by the Plaintiffs are reasonable.

EXCEPTION NO. 2

4. Plaintiffs desired the dumpster service by the City of High Point.

EXCEPTION NO. 3

CONCLUSIONS OF LAW

1. The following provisions of subsection (b) of said ordinance are separable from the invalid provisions of said ordinance, do not constitute an invalid delegation of legislative authority, do not improperly discriminate between classes and are not arbitrary or unreasonable:

(b) All persons, firms or corporations, except single family residences, apartments, and public schools, desiring to have dumpster boxes shall pay a fee of four dollars ($4.00) each time the dumpster box is serviced, said fee shall be billed monthly and failure to pay the bill within ten (10) days shall result in a discontinuance of service.

2. Payments by Plaintiffs to Defendant of dumpster box service charges under the amended ordinance (Chapter 10, Article I, Section 10-6(b)) were valid.

EXCEPTION NO. 4

3. Plaintiffs have failed to establish that they were *required* under the invalid provision of the ordinance to have dumpster boxes.

EXCEPTION NO. 5

4. Plaintiffs have not shown that they ever requested the City not to service their boxes which they could have done under Chapter 10, Article I, Section 10-2 of the Code of Ordinances of the City of High Point.

The plaintiffs appealed.

The Court of Appeals, holding that the payments made by plaintiffs to the city were involuntary, reversed the trial judge and remanded to the Superior Court of Guilford County for entry of judgment in favor of plaintiffs. We allowed defendant city's petition for discretionary review on 12 September 1977.

*Byerly and Byerly, by W. B. Byerly, Jr., for plaintiff appellants.*

*Knox Walker for defendant appellee.*

BRANCH, Justice.

[1] Plaintiffs contend that the payments to the city for garbage collection service were made as a result of coercion, on the part of the city, which rendered the payments involuntary. Plaintiffs rely upon the following language from 66 Am. Jur. 2d, *Restitution*, Section 98, page 1039:

> A rule that has been frequently applied is that to constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, for which the latter has *no other means of immediate relief than by making the payment*. [Emphasis ours.]

Plaintiffs further rely upon *Chicago v. Insurance Co.*, 218 Ill. 40, 75 N.E. 803, and *Brewing Ass'n. v. St. Louis*, 140 Mo. 419, 37 S.W. 525, to support their position that threatened discontinuance of trash collection is coercion sufficient to render the subsequent payment of fees involuntary and subject to recovery.

In *Chicago v. Insurance Co., supra*, the City of Chicago threatened to discontinue water service to all of plaintiff's properties unless it paid outstanding water bills incurred by previous owners. The insurance company paid the bills and then instituted suit to recover the sums paid. In holding for plaintiffs, the Illinois court reasoned that such payments had in fact been coerced because the city had the only source of water and plaintiff was thereby faced with a choice of paying for services which it had

not received or of foregoing the use of valuable business properties because of the lack of water service.

The Supreme Court of Missouri faced a somewhat different problem in *Brewing Ass'n. v. St. Louis, supra*. There the city had established different billing rates for its water service, and plaintiffs sought recovery of the difference between the higher rate it had paid and what it would have paid under the lower rate. The court found the rate differentiation to be reasonable and denied recovery. However, the court noted that if the differentiation had been unreasonable or arbitrary, coercion would have resulted because the city system was the only source of water and nonpayment would have resulted in a discontinuance of water service which would have completely shut down plaintiff's brewing operations.

These cases are distinguishable from instant case in that the services there involved were indispensable to the business efforts of the respective plaintiffs, and it was established that the city controlled the only source from which such services could be obtained. While not a crucial distinction, we note that trash removal is not as acute or as indispensable to a business operation as is the furnishing of water or electricity. The more important distinction to be drawn is that in each of the cited cases, the city controlled the *only* source of water and the plaintiffs had "no other means of immediate relief than by making the payment." 66 Am. Jur. 2d, *Restitution*, Section 98, page 1039. Such a situation is not present in instant case.

Section 10-2 of the High Point Code of Ordinances provides:

> No persons, other than those under the direction of the superintendent of the division of sanitation, shall haul or remove any garbage or other refuse set out for collection as in this chapter provided, except by written consent of the superintendent of the sanitary division.

The language of this section of the Code makes it clear that the city's control of trash collection and removal does not preclude individuals or private contractors from engaging in the same activity.

There is nothing in the record before us which indicates that plaintiffs ever attempted to obtain permission to remove their

own garbage or that any attempt was made to arrange with private firms to remove plaintiffs' garbage. Neither is there any indication that these courses of action have been foreclosed. In this regard, Judge Rousseau found that plaintiffs failed to show that they ever requested the city not to service their dumpster boxes. The Court of Appeals disposed of this conclusion with the following language:

> The court's Conclusion No. 4 that plaintiffs failed to show that they requested the City not to service the boxes, as plaintiffs could have done under another section of the ordinance, misses the point. While the record is silent here, it can be presumed that plaintiffs could have hauled away their own trash, or contracted with someone else to haul it away. However, if it was coercion for the City to force plaintiffs to pay the City fees under color of an unconstitutional ordinance, then it also would be coercion for the City, by discontinuing service, or threatening to discontinue service, to force plaintiffs to pay the extra cost to a private contractor, or increase their own cost, when but for the unconstitutional ordinance the City would have performed the service at no extra cost to plaintiffs.

[2] The Court of Appeals seems to proceed under the assumption that the city is required to furnish this service to its inhabitants and to do so without charge. We find nothing in the statutes or case law which supports such an assumption. A municipality may provide the service of collecting and removing garbage as an exercise of police powers delegated to it, but a municipality is under no compulsion to provide such service. Further, a municipality which does provide garbage collection services may impose a charge reasonably commensurate with the cost of this service upon the householder or building occupant. Under proper classification, the rates charged need not be uniform and a business may be charged at a rate different from individuals. Finally, a municipality need not provide such services to one who refuses to pay the charge imposed and may discontinue this service in the event of non-payment. *Brewing Ass'n. v. St. Louis*, *supra*; McQuillin, 7 Municipal Corporation, Section 24.250; 56 Am. Jur. 2d, *Municipal Corporations, Etc.*, Section 456, pages 506-507, and Section 461, page 512. *See also*, G.S. 160A-311 and G.S. 160A-312.

[1] Plaintiffs contend, however, that their use of dumpster boxes, for which the challenged fee was imposed, was "required" by the terms of a public works regulation authorized by the partially invalid ordinance.

As a result of Judge Barbee's unappealed judgment declaring portions of Section 10-6 of the High Point Code of Ordinances unconstitutional, the remaining valid part of that section now provides:

> (b) All persons firms or corporations, except single family residences, apartments, and public schools, *desiring to have dumpster boxes* shall pay a fee of four dollars ($4.00) each time the dumpster box is serviced, said fee shall be billed monthly and failure to pay the bill within ten (10) days shall result in a discontinuance of service . . . . [Emphasis ours.]

The Court of Appeals held that the record evidence does not support Judge Rousseau's fourth finding of fact to the effect that plaintiffs "desired the dumpster service by the City of High Point." In so holding, that court seems to rely heavily on the requirement imposed by the regulation of the director of public works that plaintiffs use dumpster boxes. It must be borne in mind that plaintiffs do not seek to recover damages growing out of the purchase or maintenance of the dumpster boxes; neither have they shown that their use of dumpster boxes was the result of coercion on the part of the city. Plaintiffs seek merely to recover fees paid to the city for services rendered by it.

Even prior to the enactment of the challenged ordinance, plaintiffs were required by the city to maintain these receptacles in order to obtain trash removal services and plaintiffs complied without complaint. There would appear to be no reason to comply with such a requirement unless plaintiffs desired the service. Further, plaintiffs' actions in continuing to accept the service and refusing to pay the fees imposed and their final decision to pay under protest when the service was discontinued dispel any notion that the service was not desired. It seems clear that plaintiffs desired the service but did not desire to pay for it.

There was ample evidence to support the trial judge's findings, and these findings of fact are conclusive. *Highway Commis-*

*sion v. Nuckles*, 271 N.C. 1, 155 S.E. 2d 772. These findings in turn support the trial judge's conclusions and ruling.

We, therefore, hold that the fees charged for trash collection services were validly imposed by the City of High Point and that plaintiffs have failed to show that the payments were made under such coercion as to render them involuntary.

The decision of the Court of Appeals is

Reversed.                    .